# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| WI-LAN, INC. § | |
| § | |
| Plaintiff, § | |
| v. § | |
| § | |
| HTC CORPORATION, HTC AMERICA, § | |
| INC., and EXEDEA, INC., § | Civil Action No. 2:11-cv-68 |
| § | |
| Defendants. § | **JURY TRIAL REQUESTED** |
| § | |

**HTC CORPORATION, HTC AMERICA, INC. AND EXEDEA, INC.'S MOTION TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON UNDER 28 U.S.C. §1404(a)**

TABLE OF CONTENTS

Page

I. INTRODUCTION ....................................................................................................................1

II. NATURE AND STAGE OF PROCEEDINGS ......................................................................2

    A. Procedural Background...................................................................................................2

    B. The Parties ......................................................................................................................2

III. ARGUMENT............................................................................................................................3

    A. Applicable Law ..............................................................................................................3

    B. Wi-LAN's Choice of Forum ..........................................................................................4

    C. Wi-LAN Could Have Brought this Action in the Western District of Washington ......................................................................................................................5

    D. The Private-Interest Factors Weigh Heavily in Favor of Transfer to the Western District of Washington......................................................................................5

        1. The Western District of Washington Has Significantly Greater Access to Sources of Proof ...............................................................................5

        2. Cost and Convenience of Attendance for Willing Witnesses Heavily Favor Transfer to the Western District of Washington ..................7

        3. Other Practical Problems .......................................................................11

    E. The Public Interest Factors Weigh Heavily in Favor of Transfer to the Western District of Washington....................................................................................13

        1. The Court Congestion Factor Heavily Favors Transfer to the Western District of Washington..............................................................13

        2. The Western District of Washington Has a Significant and Overriding Local Interest in this Dispute.................................................13

        3. Familiarity of the Forum with the Governing Law..................................14

IV. CONCLUSION......................................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

Cases

*In re Acer Am. Corp.*
  626 F.3d 1252 (Fed. Cir. 2011)..................................................................................8, 9

*In re Genentech, Inc.*
  566 F.3d 1338 (Fed. Cir. 2009)........................................................................5, 7, 8, 13

*In re Hoffman-La Roche Inc.*
  587 F.3d 1333 (Fed. Cir. 2009)..................................................................................5, 13

*In re Microsoft Corp.*
  630 F.3d 1361 (Fed. Cir. 2011)..................................................................................6, 9, 14

*In re Nintendo Co., Ltd.*
  589 F.3d 1194 (Fed. Cir. 2009)........................................................................3, 4, 6, 8, 14

*In re TS Tech USA Corp.*
  551 F.3d 1315 (Fed. Cir. 2008)..................................................................................3, 4, 5

*In re Verizon Bus. Network Servs. Inc.*
  635 F.3d 559 (Fed. Cir. 2011)..................................................................................12

*In re Volkswagen AG*
  371 F.3d 201 (5th Cir. 2004) (per curiam) ("*Volkswagen I*")............................................3, 4, 8

*In re Volkswagen of Am., Inc.*
  545 F.3d 304 (5th Cir. 2008) (en banc) ("*Volkswagen II*") ..............................................3, 4, 5

*In re Zimmer Holdings, Inc.*
  609 F.3d 1378 (Fed. Cir. 2010)..................................................................................4, 5, 6, 12

Statutes

28 U.S.C. §§ 1391(b) and 1400(b)................................................................................5

28 U.S.C. § 1404(a) ................................................................................................1, 3, 4, 12

## I. **INTRODUCTION**

Defendants HTC Corporation ("HTC Corp."), HTC America, Inc. ("HTC America") and Exedea, Inc. ("Exedea") (collectively "HTC") respectfully move this Court to transfer this civil action from the United States District Court for the Eastern District of Texas to the United States District Court for the Western District of Washington under 28 U.S.C. §1404(a).

HTC America is headquartered in the Western District of Washington and has no presence at all in the Eastern District of Texas. Transfer to the Western District of Washington is appropriate because:

1) The Western District of Washington is a venue in which this action could have been brought in the first instance;

2) It is far more convenient and less costly for party witnesses to attend trial in the Western District of Washington because all potential witnesses in the employ of HTC America reside in the Western District of Washington, whereas none of HTC's or Wi-LAN's witnesses reside in or near the Eastern District of Texas;

3) The Western District of Washington is much closer to HTC's sources of proof, whereas the Eastern District of Texas is far away from any likely sources of proof;

4) The Western District of Washington has a much stronger local interest in resolving the dispute than the Eastern District of Texas because the work and reputation of HTC America and its employees are at stake in the Western District of Washington, whereas no parties or witnesses have any material connection with the Eastern District of Texas; and

5) The Western District of Washington has a less congested civil docket and a track record of disposing of civil cases faster than the Eastern District of Texas.

Accordingly, public and private interest factors weigh heavily in favor of transfer to the Western District of Washington.

## II.     NATURE AND STAGE OF PROCEEDINGS

### A.     Procedural Background

Wi-LAN, Inc. ("Wi-LAN") filed the present suit on February 2, 2011, alleging that HTC products compliant with certain standards directly and indirectly infringe U.S. Patent Nos. RE37,802 ("the '802 patent") and 5,282,222 ("the '222 patent") (collectively "patents-in-suit"). This case is still in its initial pleading stage.  HTC recently answered the Complaint on June 27, 2011.  No case management conference has been held, and no discovery has occurred.

### B.     The Parties

Plaintiff Wi-LAN is a foreign patent-holding and licensing company based in Ottawa, Ontario, Canada.  Upon information and belief, Wi-LAN has not produced any products since at least 2004, does not currently produce products, and has no offices or employees in the Eastern District of Texas, other than an office at Travis Terrace Building, 505 East Travis Street, Suite 206, Marshall, Texas 75670, according to its website at http://www.wi-lan.com/company/contact/default.aspx, ostensibly only for the purpose of litigation in the Eastern District of Texas.  (Bader Decl. ¶ 3, Ex. A).

HTC Corp. is organized and existing under the laws of Taiwan and has its principal place of business in Taoyuan, Taiwan.  HTC America, a subsidiary of HTC Corp., is a Washington corporation with its principal place of business in Bellevue, near Seattle, Washington.  HTC America is responsible for the marketing and sale of HTC cell phones in the United States. Exedea is a corporation organized under the laws of Texas but has no office or employees in Texas or anywhere else in the United States.  (Maron Decl. ¶ 3).  HTC employees who will likely testify or be deposed in this case are located in Bellevue, Washington or Taiwan.  (Maron

Decl. ¶¶ 4, 9, 11). HTC Corp., HTC America and Exedea have no offices or employees in the Eastern District of Texas, or anywhere else in the State of Texas. (Maron Decl. ¶¶ 3, 4, 10).

HTC does not sell its cell phones directly to consumers in the Eastern District of Texas or anywhere else in the United States. (Maron Decl. ¶ 5). HTC cell phones are sold to consumers throughout the United States by carriers, distributors, and third-party vendors, not by HTC. (Maron Decl. ¶¶ 5, 6). HTC does not operate any retail outlets in Texas. (Maron Decl. ¶ 5).

### III.   ARGUMENT

#### A.   Applicable Law

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In reviewing petitions for writs of mandamus to transfer venue for patent infringement suits, the Federal Circuit applies the law of the regional circuit in which the district court sits, in this case the Fifth Circuit. *See, e.g., In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). The Fifth Circuit enunciated its standard for deciding motions to transfer venue in *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) (hereinafter "*Volkswagen I*"), and further elaborated on that standard in *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (hereinafter "*Volkswagen II*").

The initial threshold question is whether the suit "could have been filed" in the proposed transferee district. *Volkswagen I*, 371 F.3d at 203. If the proposed transferee district is a proper venue, then the court must weigh the relative convenience of the current district against the proposed transferee district. In determining whether a motion to transfer venue is proper, the Fifth Circuit considers a "number of private and public interest factors, none of which are given dispositive weight." *Id*. "The private interest factors are: '(1) the relative ease of access to

sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Volkswagen II*, 545 F.3d at 315 (quoting *Volkswagen I*, 371 F.3d at 203). "The public interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws [or in] the application of foreign law.'" *Volkswagen II*, 545 F.3d at 315. (quoting *Volkswagen I*, 371 F.3d at 203).

Once "the movant demonstrates that the transferee venue is clearly more convenient, . . . it has shown good cause and the district court should therefore grant the transfer." *Volkswagen II*, 545 F.3d. at 315.

### B. Wi-LAN's Choice of Forum

The Federal Circuit has applied Fifth Circuit law on transfer motions as enunciated in *Volkswagen I* and *Volkswagen II* to a plethora of patent infringement cases in recent years, and clarified the issues relevant to the transfer of patent infringement cases under 28 U.S.C. § 1404(a). In applying the Fifth Circuit law on transfer motions, the Federal Circuit has repeatedly cautioned against according too much deference to the plaintiff in its choice of forum. *See, e.g., In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010); *Nintendo*, 589 F.3d at 1200. Moreover, the Federal Circuit has stated that "Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis." *TS Tech.*, 551 F.3d at 1320 (citing *Volkswagen II*, 545 F.3d at 315 n.10). The fact that Wi-LAN chose to file this suit in the Eastern District of Texas is not a sufficient basis to prevent transfer to the Western District of Washington.

### C. Wi-LAN Could Have Brought this Action in the Western District of Washington

Wi-LAN could have brought this action against HTC in the Western District of Washington, which is a proper venue under 28 U.S.C. §§ 1391 and 1400(b) because HTC America resides in that district. Therefore, the requirement that the proposed transferee venue is a proper one is satisfied.

### D. The Private-Interest Factors Weigh Heavily in Favor of Transfer to the Western District of Washington

#### 1. The Western District of Washington Has Significantly Greater Access to Sources of Proof

The relative ease of access to sources of proof is the one of the private interest factors under Fifth Circuit law. *Volkswagen II*, 545 F.3d at 315. In analyzing this factor, the Fifth Circuit held that the notion "[t]hat access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments [in technology] does not render this factor superfluous." *Id.* at 316. As the Federal Circuit observed from its experience, "'[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.'" *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quoting *Neil Bros, Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). Applying Fifth Circuit law, the Federal Circuit in *Genentech* expressly rejected the district court's rationale that "'[t]he notion that the physical location of some relevant documents should play a substantial role in the venue analysis is somewhat antiquated in the era of electronic storage and transmission.'" *Genentech*, 566 F.3d at 1346. Moreover, in *TS Tech*, the Federal Circuit held that increased ease of storage and transportation of electronic documents does not make this factor superfluous or less significant. *TS Tech*, 551 F.3d at 1321.

Furthermore, the Federal Circuit has repeatedly cautioned against giving any weight to plaintiff's establishment of contact with its chosen forum only for the purpose of litigation. In *In re Hoffman-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009), the Federal Circuit noted that "there appears to be no connection between this case and the Eastern District of Texas" except that the plaintiff's litigation counsel in California transferred 75,000 pages of electronic documents to its litigation counsel in Texas. *Id*. at 1336-37. The Federal Circuit concluded that "the assertion that these documents are 'Texas' documents is a fiction which appears to have been created to manipulate the propriety of venue." *Id*. at 1337. In *Zimmer Holdings*, the plaintiff "transported copies of its patent prosecution files from Michigan to its Texas office space" and claimed that its choice of forum in the Eastern District of Texas as "its principal place of business" should be entitled to deference. *Zimmer Holdings*, 609 F.3d at 1381. The Federal Circuit rejected that argument, noting that it is "clear that the Eastern District of Texas is convenient only for [the plaintiff's] litigation counsel." *Id*.

In *Nintendo*, the Federal Circuit considered the relative closeness to sources of proof and convenience for witnesses to attend trial in the Western District of Washington as important factors in its transfer analysis. *Nintendo*, 589 F.3d at 1201. In *In re Microsoft Corp.*, 630 F.3d 1361 (Fed. Cir. 2011), the Federal Circuit rejected the plaintiff's argument that "it has an established presence in the Eastern District of Texas" by claiming its Tyler, Texas office as its "principal place of business" because it is "where its documents are maintained." *Id*. at 1364. The plaintiff even "took the extra step of incorporating under the laws of Texas sixteen days before filing suit," but the Federal Circuit saw this effort as nothing more than an attempted manipulation of venue. *Id*. at 1365.

In the present case, HTC's documentary and other physical evidence is primarily located in Bellevue, Washington and Taiwan. (Maron Decl. ¶ 7). HTC's records and equipment related to the design, manufacture and operations of its cell phones are located at these sites. (Maron Decl. ¶ 7). Documents related to sales and marketing of HTC phones in the United States are primarily located in HTC America's corporate headquarters in Bellevue. (Maron Decl. ¶ 7). Documents related to HTC's corporate finance, market analyses and forecasts are also located in Bellevue and Taiwan. (Maron Decl. ¶ 7). In contrast to easy access to HTC's evidence in the Western District of Washington, none of HTC's evidence exists in or near the Eastern District of Texas. (Maron Decl. ¶ 7).

Wi-LAN admits in its Complaint that its principal place of business is located in Ottawa, Ontario, Canada. (Docket Entry 1, ¶ 1). Its purported office location in Marshall, Texas is ostensibly only for the purpose of patent litigation in the Eastern District of Texas. Wi-LAN's patent prosecution, licensing, and other business activities are conducted by its main office in Ottawa, not by its Marshall office. (Bader Decl. ¶ 5). Even if Wi-LAN has transported its documentary or other evidence to its Marshall office for the purpose of litigation, the existence of such evidence in Marshall should not be accorded any weight in the venue analysis. In any event, the bulk of relevant evidence usually comes from the accused infringer in a patent infringement suit, not from the plaintiff. *Genentech*, 566 F.3d at 1345. Therefore, the ease of access to sources of proof factor heavily favors transfer to the Western District of Washington.

## 2. Cost and Convenience of Attendance for Willing Witnesses Heavily Favor Transfer to the Western District of Washington

The Court must weigh the cost and convenience for witnesses to travel and attend trial in the Eastern District of Texas versus the Western District of Washington. The Fifth Circuit explained:

> When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment. Furthermore, the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour.

*Volkswagen I*, 371 F.3d at 204-205. In *Genentech*, the Federal Circuit considered the cost and convenience of attendance an important factor, "'probably the single most important factor,'" in the transfer analysis. *Genentech*, 566 F.3d at 1343 (quoting *Neil Bros.*, 425 F. Supp. 2d at 329) (emphasis added).

More recently, the Federal Circuit decided in favor of transferring a patent infringement case to the Western District of Washington, with a fact pattern remarkably similar to that of the present case. *See Nintendo*, 589 F.3d at 1196-97. In *Nintendo*, the defendants included a Japan corporation with its headquarters in Kyoto and Washington corporation with its principal place of business in Redmond, Washington. *Id.* at 1196. The plaintiff was a limited liability corporation existing under the laws of Ohio, with its principal place of business in Dublin, Ohio. *Id*. at 1196-97. The Federal Circuit, finding that "[a]ll of the identified key witnesses in this case are in Washington, Japan, Ohio, and New York" and "[n]o witnesses live in Texas," concluded that "[t]he cost of attendance for willing witnesses clearly favors transfer." *Id*. at 1199 (emphasis added).

Recent Federal Circuit precedents issued in 2011 also emphasize the cost and convenience for witnesses to attend trial as an important factor in the venue analysis. In *In re Acer Am. Corp.*, 626 F.3d 1252 (Fed. Cir. 2011), the Federal Circuit accentuated the fact that "[a] substantial number of party witnesses . . . reside in or close to the Northern District of

California," and "would likely incur significant expenses for airfare, meals, and lodging, as well as losses in productivity from time spent away from work" if they were required to travel to the Eastern District of Texas. *Id.* at 1255. The Federal Circuit found that this factor clearly favored transfer to the Northern District of California even though one of the defendants, Dell, was headquartered in Texas but was "outside the Eastern District and some 300 miles from Marshall, Texas." *Id.* at 1254. In *Microsoft*, the Federal Circuit again accentuated the "fact that a significant number of witnesses and parties were actually located within the transferee venue and could be deposed and testify without significant travel or expense, while no witness or party was located within the plaintiff's chosen forum." *Microsoft*, 630 F.3d at 1363. Furthermore, the Federal Circuit regarded the plaintiff's maintenance of documents in its Texas office and even incorporation in Texas sixteen days before filing the suit as serving "no other purpose than to manipulate venue," and found that the facts of the case heavily favored transfer to the Western District of Washington, where Microsoft was headquartered. *Id.* at 1365.

In the present case, all the likely witnesses identified by HTC are located in Bellevue and Taiwan. (Maron Decl. ¶¶ 9, 11). Potential HTC witnesses not yet identified at this time may be located in Bellevue and Taiwan, but not in the Eastern District of Texas. (Maron Decl. ¶¶ 9-11). Upon information and belief, all the fact witnesses in the employ of Wi-LAN, including inventor witnesses, are located in Canada. (Bader Decl. ¶ 6).

The nearest major international airport to the Western District of Washington Courthouse in Seattle is Seattle/Tacoma International Airport (SEA), and the nearest major international airport to the Eastern District of Texas Courthouse in Marshall is Dallas-Fort Worth International Airport (DFW). The nearest major international airport to HTC witnesses in Taiwan is Taipei Taoyuan International Airport (TPE). The nearest major international airport to Wi-LAN

witnesses in Ottawa is Ottawa International Airport (YOW). (Bader Decl. ¶ 8). The comparative distances of round-trip air travel for witnesses located in Bellevue, Taipei and Ottawa to DFW and SEA airports are as follows:

| Origin | Round-Trip Air Travel to DFW | Round-Trip Air Travel to SEA |
|---|---|---|
| Bellevue | 3,320 miles | 0 mile (Local) |
| Taipei | 15,400 miles | 12,120 miles |
| Ottawa | 2,840 miles | 4,380 miles |

(Bader Decl. ¶¶ 9-13, Ex. C-G).

As shown above, flight distances are much shorter for all witnesses to travel to Seattle than to Dallas except for Wi-LAN witnesses located in Ottawa. However, the one-way driving distance and estimated driving time from DFW to the Eastern District of Texas Courthouse at 100 East Houston Street, Marshall, Texas 75670 are 170.23 miles and 2 hours 44 minutes, respectively. (Bader Decl. ¶ 14, Ex. H). In contrast, the one-way driving distance and estimated driving time from SEA to the Western District of Washington Courthouse at 70 Stewart Street, Seattle, Washington 98101 are merely 16.07 miles and 22 minutes, respectively. (Bader Decl. ¶ 15, Ex. I). Whatever advantage of shorter flight distance between Ottawa and Dallas for Wi-LAN witnesses is more than negated by the much longer driving time between DFW and Marshall, Texas. For HTC witnesses located in Taiwan, the flight distance to DFW is much longer than the flight distance to SEA, and the driving distance from DFW to the Eastern District of Texas Courthouse in Marshall is much longer than the driving distance from SEA to the Western District of Washington Courthouse in Seattle.

The flight and driving distances shown above still vastly underestimate the true cost and inconvenience to HTC witnesses. Witnesses from Bellevue cannot travel for court hearings on

the morning of the hearing – they must travel the day before the hearing, thus often losing an entire additional day from their jobs and families while incurring the additional expense of an overnight hotel stay and meals. If the hearing ends late in the day, these witnesses may have to stay an extra night in Texas for a flight back to Seattle the next day. HTC witnesses from Taiwan would have to fly much longer to Dallas than to Seattle, and after they arrive at DFW airport, they would need an expensive taxi ride of more than 170 miles and nearly 3 hours to Marshall. If the hearings were held in Seattle, witnesses from Bellevue would only incur local driving time without any air travel. Although witnesses from Taiwan would likely require overnight stay in Seattle, attending a trial in Seattle would still be far more convenient than attending a trial in Marshall.

In summary, it is far more convenient and far less costly for all of HTC's likely witnesses to attend trial in the Western District of Washington than in the Eastern District of Texas, and it is not any less convenient for Wi-LAN's witnesses to attend trial in the Western District of Washington than in the Eastern District of Texas. Therefore, the cost and convenience of attendance factor weighs strongly in favor of transfer.

### 3. Other Practical Problems

Wi-LAN may argue that because this Court presided over a previous patent infringement suit, namely, *Wi-LAN, Inc. v. Research In Motion Corp., et al.*, 2:08-cv-247-TJW ("*Wi-LAN v. RIM*"), which asserted the same patents-in-suit against other defendants and was settled before trial, this Court's familiarity with the patents-in-suit would make the trial of the present case easy, expeditious and inexpensive. This argument is deficient in several respects. First, the infringement theories asserted against HTC in the present suit are different from those asserted against the defendants in *Wi-LAN v. RIM*. (*See* Bader Decl. ¶ 7, Ex. B). For example, Wi-LAN's Complaint against HTC alleges that products compliant with the IEEE 802.16 and/or Bluetooth

3.0 standards infringe the '222 patent, (Docket Entry 1, ¶ 15), whereas *Wi-LAN v. RIM* did not litigate any infringement issues related to the IEEE 802.16 or Bluetooth 3.0 standard. Second, according to the blog website of McKool Smith, counsel for Wi-LAN, the Honorable T. John Ward, who presided over *Wi-LAN v. RIM* litigation, has announced his retirement from the United States District Court for the Eastern District of Texas, effective October 1, 2011. (Bader Decl. ¶ 16, Ex. J at 5). It is therefore highly unlikely that Judge Ward will conduct claim construction, hear dispositive motions, or preside over the trial of this case.

Furthermore, Federal Circuit precedents have cautioned against giving too much deference to the transferor court just because the same patents were previously litigated in that court. In *Zimmer Holdings*, the district court denied the transfer motion because "'[t]ransferring this case . . . will prevent the parties from taking advantage of the built-in efficiencies that result from having related cases before the same judge.'" *Zimmer Holdings*, 609 F.3d at 1380. The Federal Circuit concluded, however, that this does not negate the "significance of having trial close to where most of the identified witnesses reside and where the other convenience factors clearly favor." *Id*. at 1382. Most recently, in *In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559 (Fed. Cir. 2011), the Federal Circuit again rejected the notion that "judicial economy favored maintaining this suit in Marshall, Texas" because the Court had handled the same patent in a previous lawsuit. *Id*. at 561. The Federal Circuit further stated that "[t]o interpret § 1404(a) to hold that any prior suit involving the same patent can override a compelling showing of transfer would be inconsistent with the policies underlying § 1404(a)." *Id*. at 562.

Therefore, the "other practical problems" factor does not favor keeping this case in the Eastern District of Texas.

### E. The Public Interest Factors Weigh Heavily in Favor of Transfer to the Western District of Washington

#### 1. The Court Congestion Factor Heavily Favors Transfer to the Western District of Washington

The most recent statistics published by www.uscourts.gov reveal the following median time intervals for the Eastern District of Texas and the Western District of Washington to dispose of civil cases:

| District | All Civil Cases<br><br>Median Time Interval in Months | No Court Action<br><br>Median Time Interval in Months | Before Pretrial<br><br>Median Time Interval in Months | Trial<br><br>Median Time Interval in Months |
|---|---|---|---|---|
| Eastern District of Texas | 9.6 | 6.4 | 9.9 | 24.2 |
| Western District of Washington | 7.1 | 4.0 | 8.3 | 16.9 |

(Bader Decl. ¶ 17, Ex. K). The Western District of Washington disposes of civil cases much faster than the Eastern District of Texas at all stages of litigation, including cases that go through trial. Therefore, the court congestion factor clearly favors transfer to the Western District of Washington.

#### 2. The Western District of Washington Has a Significant and Overriding Local Interest in this Dispute

The Federal Circuit has held that a strong local interest exists when the "cause of action calls into question the work and reputation of several individuals residing in or near that district who presumably conduct business in that community." *Hoffman-La Roche*, 587 F.3d at 1336. Such is the case in the Western District of Washington, where the work and reputation of HTC America and its employees are in question. No such compelling local interest exists in the

Eastern District of Texas. In fact, the Eastern District of Texas has little, if any, relevant local interest in this dispute. Wi-LAN alleges that HTC America is a Texas corporation, but HTC America is in fact a Washington corporation with its headquarters and principal place of business in Bellevue, Washington. (Maron Decl. ¶ 2). Neither HTC Corp. nor HTC America has any office in the Eastern District of Texas or anywhere else in Texas. (Maron Decl. ¶ 4). Although Exedea remains formally incorporated as a Texas corporation, it has no office or employees in Texas or anywhere else in the United States. (Maron Decl. ¶ 3).

In the present case, no parties or witnesses have any material connection with the Eastern District of Texas. In contrast, HTC America is headquartered in the Western District of Washington, and three likely witnesses identified by HTC also reside in that district. (Maron Decl. ¶ 9). This patent infringement action calls into question the work and reputation of HTC America as well as individuals residing in the Western District of Washington who conduct business in that community. Therefore, the local interest factor weighs heavily in favor of transfer to the Western District of Washington.

### 3. Familiarity of the Forum with the Governing Law

Both the Eastern District of Texas and the Western District of Washington are experienced in adjudicating patent infringement suits. The fact that the Federal Circuit has transferred patent cases to the Western District of Washington shows that the Federal Circuit is confident in the Western District of Washington's ability to adjudicate patent disputes. *See, e.g., Nintendo*, 589 F.3d at 1201; *Microsoft*, 630 F.3d at 1365. Therefore, this factor does not favor keeping the case in the Eastern District of Texas.

## IV. CONCLUSION

HTC seeks to have this case transferred to a venue that is far more convenient and less expensive for witnesses to attend trial, that is much easier to access sources of proof, that has a strong localized interest in adjudicating the dispute, and that is much faster in the disposition of civil cases, including cases that go through trial. Such a venue is the Western District of Washington. Therefore, HTC's motion for transfer of venue from the Eastern District of Texas to the Western District of Washington should be granted.

Dated: August 23, 2011       Respectfully submitted,

By: */s/ Eric H. Findlay*
Eric H. Findlay
State Bar No. 00789886
**Findlay Craft LLP**
6760 Old Jacksonville Highway, Suite 101
Tyler, Texas 75703
Telephone: (903) 534-1100
Facsimile: (903) 534-1137
Email: efindlay@findlaycraft.com

Stephen S. Korniczky (*Admitted Pro Hac Vice*)
Martin R. Bader (*Admitted Pro Hac Vice*)
**Sheppard Mullin Richter & Hampton LLP**
12275 El Camino Real, Suite 200
San Diego, California 92130
Telephone: (858) 720-8900
Facsimile: (858) 509-3691
skorniczky@sheppardmullin.com

**Attorneys for Defendants**
**HTC CORPORATION, HTC AMERICA, INC., EXEDEA, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document *via* the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 23rd day of August 2011.

>*/s/ Eric H. Findlay*
>Eric H. Findlay

## CERTIFICATE OF CONFERENCE

The undersigned certifies that the parties complied with Local Rule CV-7(h)'s meet and confer requirement. On August 23, 2011, Martin R. Bader, Stephen S. Korniczky and Eric Findlay, counsel for Defendants, conducted a telephonic conference with Samuel Baxter, counsel for Wi-LAN, Inc. The parties attempted to resolve the issue in this motion but reached an impasse.

>*/s/ Eric H. Findlay*
>Eric H. Findlay