IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| WI-LAN INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 2:11-CV-68-JRG |
| | § | |
| HTC CORP., et al., | § | **CONSOLIDATED WITH** |
| | § | |
| Defendants. | § | CASE NO. 2:12-cv-600-JRG |
| | § | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Pending before the Court is the Defendants' Motion to Sever and Transfer Venue to United States District Court for the Southern District of California (Dkt. No. 130) and Sierra Wireless America, Inc.'s Supplemental Motion to Sever and Transfer Venue to United States District Court for the Southern District of California (Dkt. No. 144). The Court held a hearing on December 14, 2012 and heard argument on both motions. The Moving Defendants[1] seek to sever Exedea, Inc. out of the consolidated action, to stay the severed out Exedea action, and to transfer the Plaintiff's claims against the Moving Defendants to the Southern District of California (SDCA). Sierra joins in the Moving Defendants' motion to sever and transfer, and additionally moves to be severed into a separate case.

---

[1] The Moving Defendants are collectively Apple Inc., Alcatel-Lucent USA Inc., Hewlett-Packard Company, HTC Corporation, HTC America, Inc., Kyocera Communications, Inc., Novatel Wireless, Inc., Sierra Wireless America, Inc., and Dell Inc.

1

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Wi-LAN sued HTC Corp., HTC America, and Exedea in the Marshall Division on February 2, 2011 (the "HTC Action"). *See* Cause No. 2:11-cv-68. On August 23, 2011, Defendants HTC Corp., HTC America, and Exedea filed a motion to change venue to the Western District of Washington. *See* Dkt. No. 20. That motion was denied by this Court. *See* Dkt. No. 92. Then, on September 1, 2011, Wi-LAN filed a second suit against HTC America and the other seven Moving Defendants in the Tyler Division (the "Apple Action"). *See Wi-LAN v. Apple Inc., et al.*, Cause No. 2:11-cv-453. On February 21, 2012, the defendants in the Apple Action filed a Motion to Transfer Venue from the Tyler Division to SDCA. The Apple Action was subsequently transferred to the Marshall Division under the first-to-file rule on September 14, 2012, and the motion to transfer to SDCA was denied without prejudice. The two cases were consolidated into this action for all pretrial purposes, except for venue, on October 10, 2012.

## III.    SEVERANCE OF EXEDEA

The Court first considers the Moving Defendants' request to sever and stay Exedea (the "Severance Motion"). The Moving Defendants contend that they were improperly joined with Exedea in this lawsuit under *In re EMC (In re EMC I)*, 677 F.3d 1351 (Fed. Cir. 2012) and Rule 20. They are argue that Exedea was nothing more than a "paper" company with no employees that functioned simply to import a single third-party product and transfer title of that product to a distribution center on behalf of HTC. The Moving Defendants argue that their accused products and processes are different from Exedea's because Exedea has no sales operations and make none of its own products. They also contend that severance and a stay is appropriate because Exedea is no longer an active company and, in addition, Exedea has agreed to be bound by any judgment

2

against HTC in this case.

In response, Wi-LAN contends that Defendants' Severance Motion is procedurally defective—namely, that the motion to sever is (1) untimely because the facts on which the severance argument is based have been known since the HTC Action was filed, and (2) that the Defendants in the Apple action have no standing to seek severance of Exedea, who is not a party in their case. The Court will address the timeliness of the severance argument with the issue of transfer.

The Court agrees with Wi-LAN on the issue of standing because a consolidation of two similar cases under Rule 42 does not merge the two suits "into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Johnson v. Manhattan Ry Co.*, 289 U.S. 479, 496-97 (1933). Only HTC Corp. and HTC America may move to sever Exedea from their case. By joining the Severance Motion, the Defendants in the Apple action are essentially asking the Court to undo the Consolidation Order because of Exedea.[2] The Court is not persuaded to do so. Instead, the Court construes the Severance Motion as brought by HTC Corp. and HTC America only.

In the *In re EMC I* opinion, the Federal Circuit clarified the test for joinder by holding that "[c]laims against independent defendants (i.e., situations in which the defendants are not acting in concert) cannot be joined under Rule 20's transaction-or-occurrence test unless the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts." 677 F.3d at 1359. In addition, "joinder is not appropriate where different products or processes are involved." *Id.* "Unless there is an actual link between the facts underlying each

---

[2] The Consolidation Order states that the cases are consolidated "for all pretrial issues (except venue)." (Dkt. No. 107.)

3

claim of infringement, independently developed products using differently sourced parts are not part of the same transaction, even if they are otherwise coincidentally identical." *Id.* Under Rule 20, joinder is proper where: (1) the claims against the defendants arise out of the "same transaction, occurrence, or series of transactions or occurrences," and (2) there is a "question of law or fact common to all defendants." *Id.* at 1356.

Wi-LAN filed the HTC Action against HTC Corp., HTC America, and Exedea, Inc. on February 2, 2011, with allegations that certain HTC products infringe its patents. HTC Corp., HTC America, and Exedea, Inc. are all part of the same HTC corporate family and the allegedly infringing activities all involve a common supply chain in which Exedea plays a critical role. HTC Corp., located in Taiwan, manufactured and designed the Nexus One Phone and shipped the phone to the U.S. *See* Dkt. No. 154, Ex. H2 (Maron Dep.) at 87:2-88:18; 92:3-93:15; 164:12-165:21. Exedea accepted the shipment, signed for it, took title to the phones and ensured that the phones arrived at the sole distributor, Brightpoint in Indiana. *Id.* at 87:2-88:18; 90:19-91:5; 92:3-93:15; 94:11-18. HTC America was then responsible for marketing and selling the HTC phones manufactured by HTC Corp. and delivered to Brightpoint by Exedea. *Id.* at 164:12-165:21; 166:18-167:2. This series of steps constituting the HTC supply chain was created and implicated as part of the HTC corporate family's marketing strategy. No one has seriously claimed that Exedea is an independent entity and not part and parcel of the HTC corporate group.

The facts underlying the claim of infringement asserted against each HTC Defendant share an aggregate of operative facts adequate to meet Rule 20's transaction-or-occurrence test. The HTC Defendants are all part of the same corporate family that together manufactured, distributed, and sold the same accused products. As a result, the Court is persuaded that these facts fall within

4

the guidance of *In re EMC I*; thus, joinder of the HTC Defendants is appropriate in this case. Accordingly, the request of HTC Corp. and HTC America for severance of Exedea is **DENIED**. As a consequence of this holding, the Moving Defendants' request to stay the case as to Exedea is **MOOT**.

## IV.     TRANSFER OF THE HTC ACTION

Having denied severance of Exedea from the HTC Action, the Court now turns to whether the HTC Action should be transferred to SDCA.[3] The initial question in applying the provisions of § 1404(a) is whether the suit could have originally been brought in the proposed transferee district. *In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201, 203 (5th Cir. 2004). For purposes of venue, a corporation is deemed to reside in any district where it is subject to personal jurisdiction. 28 U.S.C. § 1391(c).

HTC Corporation is organized and existing under the laws of Taiwan and has its principal place of business in Taoyuan, Taiwan. HTC America, Inc., a subsidiary of HTC Corp., is a Washington corporation with its principal place of business in Bellevue, Washington. Exedea, Inc. is now dissolved, but it was formerly a corporation organized under the laws of Texas. Exedea's sole function within the HTC corporate structure was to take title to imported phones from overseas before transferring them to a third-party distribution center in Indiana. Exedea's corporate dissolution occurred during the pendency of this lawsuit and, according to Texas law, its existence continues for the purposes of this suit and the present motion to transfer. *See* TEXAS BUSINESS ORGANIZATIONS CODE § 11.356.

---

[3] Pursuant to the Consolidation Order and Rule 42, the Court considers the Moving Defendants' motion to transfer venue to SDCA separately for each consolidated action.

Neither Moving Defendants nor HTC Defendants provide argument on whether the HTC Action could have been originally brought in SDCA with Exedea as a party. Instead, the Moving Defendants relied on the strength of their motion to sever and dismissed the possibility of an alternative outcome. *See* Dkt. No. 130 at 7 ("Because Exedea should be severed from the Moving Defendants, it is not necessary to show that personal jurisdiction [in SDCA] exists over Exedea."). This is HTC Defendants' second bite at the apple seeking to transfer this case from the Eastern District of Texas ("EDTX"). This Court previously denied a motion to transfer to the Western District of Washington filed by the HTC Defendants due to Exedea's lack of activities in that district. The Court explained in its earlier Order that "[t]estimony from HTC's own 30(b)(6) witness makes it clear that Exedea provided nothing more than 'inventory management services' in connection with the shipment of Nexus One phones from Google's manufacturer (HTC Corp. in Taiwan) to Google's distributor (Brightpoint in Indiana)." Dkt. No. 92, at 5 (citations omitted). None of the parties claim that those facts and circumstances have changed. Although this motion was filed almost two years after the Complaint and more than a year after the first transfer motion, HTC Defendants provide less evidence now than they did before attempting to show that SDCA has a stronger jurisdictional claim over Exedea than the Western District of Washington. As a result, the Court finds that the HTC Defendants have failed to provide even a scintilla of evidence to overcome the initial jurisdictional threshold question. While the delay in seeking transfer to SDCA is significant in this instance and would likely weigh against transfer in a § 1404(a) analysis, no such assessment needs to be made since the initial threshold has not been crossed by movants.

Indeed, the record reflects that the Moving Defendants are keenly aware of the problems Exedea poses to their transfer request. When the Court inquired why Exedea should be severed out without also severing out HTC (since their accused infringement relates to the same products), Defendants admitted that "the main reason is because it helps with the transfers." 12/14/2012 Tr. at 85:17-18. The HTC Defendants have failed to satisfy the threshold question of whether this action could have originally been brought in SDCA. This was the HTC Defendants' burden and they have failed to meet it, instead opting to rely on securing a severance, which has now been denied. Accordingly, transfer of the HTC Action to SDCA is **DENIED**.

## V.    TRANSFER OF THE APPLE ACTION

The Court now separately considers whether the Apple Action should be transferred to SDCA. Change of venue is governed by 28 U.S.C § 1404(a). Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a). However, a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of America, Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008).

The initial question in applying the provisions of § 1404(a) is whether the suit could have originally been brought in the proposed transferee district. *Volkswagen I*, 371 F.3d at 203. If the transferee district is a proper venue, then the court must weigh the relative public and private factors of the current venue against the transferee venue. *Id.* In making such a convenience

7

determination, the Court considers several private and public interest factors, none of which are given dispositive weight. *Id.* The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

### a. Proper Venue

The Moving Defendants contend that they are each subject to personal jurisdiction in SDCA either because they reside in the district, or offer for sale, or sell accused products in that district, to have contacts sufficient to establish jurisdiction there. Wi-LAN does not argue to the contrary. Therefore, the initial threshold in this case has been met and analysis of the public and private interests cited above must next be considered and weighed.

### b. Private Interest Factors

#### i. Relative Ease of Access to Sources of Proof

Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be a valid private interest factor. *See Volkswagen II*, 545 F.3d at 316; *TS Tech*, 551 F.3d at 1321. Indeed, the Federal Circuit has indicated that access to

8

an alleged infringer's proof is important to venue transfer analyses in patent infringement cases. *See Genentech*, 566 F.3d at 1345 ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.").

The Moving Defendants who are parties to the Apple Action are Apple Inc., Alcatel-Lucent USA Inc., Hewlett-Packard Company, HTC America, Inc., Kyocera Communications, Inc., Novatel Wireless, Inc., Sierra Wireless America, Inc., and Dell Inc. ("Apple Defendants"). Kyocera was severed out of this case on March 3, 2013, and is not considered to be a Moving Defendant to this motion. *See* Dkt. No. 287.

Of the seven remaining Apple Defendants, only two have headquarters within SDCA—Sierra and Novatel. *See* Dkt. No. 130 at 8. However, Sierra Wireless America, Inc. (**Sierra**) also stores source code and employs development engineers with knowledge of the accused products outside of California, including, in Richmond, New Jersey, Canada, France, Hong Kong, and China. *See* Dkt. No. 154, Ex. G1. Novatel Wireless, Inc. (**Novatel**) designs, tests, and sells the majority of its accused products from offices in SDCA. However, the parties dispute whether Novatel's wholly-owned subsidiary, Enfora (located in Richardson, Texas, and which is within EDTX) also has documents related to the development of the accused products.

Apple, Inc. (**Apple**) has its headquarters in the Northern District of California and also operates a substantial campus in Austin, Texas. Apple's Austin office primarily houses accounting and finance documents, some of which may be relevant to damages in this case. *See* Dkt. No. 154, Ex. E1.

**HTC America** is headquartered in Washington but retains 22 employees with offices and

9

documents in Texas. Wi-LAN has specifically identified 8 Texas employees with information relevant to the testing, performance, sales, and/or marketing of HTC accused devices. *See* Dkt. No. 154, Blackstone Decl. ¶¶73-76. HTC also identified three regional sales managers located within EDTX. *Id.* ¶¶ 74-76. Additionally, a significant portion of HTC's research, design and testing takes place in Taiwan with its parent, HTC Corp. *Id.* ¶¶69-72.

Hewlett-Packard Company **(HP)** is headquartered in Palo Alto, California and also maintains several facilities in Texas. HP submitted a declaration stating that the "location primarily responsible for the products made or sold by HP that are identified in Plaintiff's infringement contentions is Houston, Texas." *See* Dkt No. 154, Ex. D1 ¶4. Additionally, members of the relevant Communications Technology team are located in both Houston, Texas and Taipei, Taiwan. *Id.* ¶3.

Dell, Inc. **(Dell)** is headquartered in Round Rock, Texas (near Austin) and keeps its operations, finance, sales, and marketing teams there. *See* Dkt. No. 154, Ex. C1. Although most of Dell's engineering activity is in Sunnyvale, California, or in Taiwan, some product planning and engineering resources are also located in Round Rock. *Id.*

Alcatel-Lucent USA Inc. **(Alcatel)** maintains a 1,500 person corporate campus in Plano, Texas, which is within EDTX. *See* Dkt No. 154, Ex. B1. Wi-LAN has specifically identified 26 Alcatel employees who work in the research and development area of the accused products, 25 of whom are located in Plano. *Id.* Ex. B5 and B6. Additionally, 56 relevant sales personnel are located in Texas. *Id.* Ex. B6 and B9. Furthermore, Alcatel's President and Director, Treasurer, and Chief Financial Officer all maintain offices and relevant documents in the EDTX in Plano. *Id.* Blackstone Decl. ¶21.

Wi-LAN Inc. (**Wi-LAN**) is a Canadian corporation with its principal place of business in Ottawa, Canada, and with its American headquarters in Florida, both of which are closer to EDTX than SDCA. *See* Dkt. No. 154, Blackstone Decl. ¶¶5-6. Wi-LAN also has an office in Marshall, Texas, which is within EDTX, and maintains most of its relevant documents in Texas as a result of prior litigation. *Id.* ¶¶6-7. These documents include the files of Wi-LAN's patent prosecution attorneys, Mr. Dawes and Mr. Morgan, who have both indicated that they do not have any additional information not already produced. *See* Dkt. No. 154, Ex. J1 and J2.

Wi-LAN's infringement allegations also implicate third party chipmakers, and as such, the Court will consider relative access to third-party sources of proof in analyzing this factor. The parties have identified three relevant third-party chip suppliers: Qualcomm, Texas Instruments (TI), and Sequans. Qualcomm's corporate headquarters is located in San Diego, California. Qualcomm's Vice President of Real Estate and Facilities has submitted a declaration that Qualcomm's evidence is "either stored in or accessible from" San Diego. *See* Dkt. No. 130-2, ¶5. TI is headquartered in Dallas, Texas, though the parties dispute whether TI's relevant documents are located in Sunnyvale, California, or Texas. Sequans is headquartered in France, and has U.S. offices in Minnesota. Additionally, Wi-LAN submits that it is in the process of gathering relevant third-party evidence from sources other than chipmakers, and such evidence is scattered all around the United States.

On balance, the Court finds that Wi-LAN has shown that significant sources of proof exist within or substantially close to EDTX. Six of the seven Apple Defendants maintain offices, employees, or have related companies in Texas: Alcatel is based in EDTX; Novatel's subsidiary, Enfora, is located within EDTX; HP has testified their relevant documents are in Houston; Dell

11

and Apple have large corporate campuses in Austin; and HTC has multiple employees with knowledge within EDTX and throughout Texas. Moreover, four Apple Defendants have relevant documentation stored overseas, which is equally inconvenient to both EDTX and SDCA. Of the three third-party chip suppliers, only Qualcomm is located within SDCA, while TI is based in Dallas. In support of transfer, two of the seven Apple Defendants have headquarters within SDCA and two others have headquarters in other parts of California. On balance, the Apple Defendants have not established that significant sources of proof exist in SDCA as compared to EDTX. Accordingly, the Court finds this factor weighs against transfer.

### ii. *Availability of Compulsory Process*

The second private interest factor is the availability of compulsory process to secure the attendance of non-party witnesses. A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not. *Volkswagen II*, 545 F.3d at 316. Rule 45 of the Federal Rules of Civil Procedure limits the court's subpoena power by protecting non-party witnesses who work or reside more than 100 miles from the courthouse. *Id.*

Here, the Apple Defendants have not specifically identified any non-party witness in this case who is within the subpoena power of SDCA. The Apple Defendants point out that SDCA is the only forum with absolute subpoena power over Qualcomm. They argue the important of this fact because Qualcomm is "likely [to] supply the primary technical witnesses that will testify at trial." *See* Dkt. No. 130 at 11. However, the Apple Defendants are asking the Court to attribute more weight based on this assertion of a potential likelihood that an un-named and otherwise unidentified third-party witness may or may not be used for trial sometime in the future. Indeed, there exists the equal possibility that no Qualcomm witness will testify at trial and SDCA's

absolute subpoena power will not be utilized. Absent more concrete information, the Court cannot conduct a fair and meaningful analysis of whether SDCA or any other district may be more convenient for non-party witnesses. It is worth recalling that the Moving Defendants bear this burden to supply trustworthy and concrete information of the type missing here.

On the other hand, Wi-LAN has identified a scant few non-party witnesses that are within the subpoena power of EDTX. These witnesses include several employees from Enfora, a subsidiary of Novatel (whose relevance is still in dispute), and a former Alcatel employee in Richardson, Texas. On weighing the facts, the Court finds that EDTX is only slightly stronger in this regard than SDCA. Accordingly, this factor weighs slightly against transfer.

### iii. Cost of Attendance for Willing Witnesses

The third private interest factor is the cost of attendance for willing witnesses. "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 556 F.3d at 1342. The Court in *Volkswagen I* explained:

> [T]he factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

371 F.3d at 205. Although the court must consider the convenience of both the party and non-party witnesses, "it is the convenience of non-party witnesses…that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 775 (E.D. Tex. 2000); *see also id.* at 204 (requiring courts to "contemplate consideration of the parties and witnesses"); *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 765-66 (E.D. Tex. 2009).

Here, the only third-party witnesses clearly identified by both parties are the three patent prosecution attorneys: Daniel Dawes, Kevan Morgan and Ryan Dodge. Mr. Dawes resides in Huntington Beach, California, and Mr. Morgan and Mr. Dodge reside in Seattle, Washington. Mr. Morgan has testified that traveling to Texas would be more convenient for him than traveling to San Diego. *See* Dkt. No. 154, Ex. J1. However, for Mr. Dawes and Mr. Dodge, SDCA would be the more convenient forum for travel purposes.

Wi-Lan also identified two inventors of the asserted patents, Michael Fattouche and Hatim Zaghloul. Both inventors submitted declarations that traveling to Texas for trial would be more convenient for them than traveling to San Diego. *Id.* Ex. I1 and I2. Additional third parties Wi-LAN identified include a participant in the 802.11 standards-setting process who resides in Allen, Texas, a former Alcatel employee in Richardson, Texas, six Enfora employees in Richardson, Texas, and four former Wi-LAN employees who reside in Eastern Canada. *See* Blackstone Decl. ¶¶56, 84-49, 108, 114 115. Both Allen and Richardson, Texas are within EDTX.

Regarding party witnesses, the Court's discussion of the first factor reveals that they are widespread indeed and are scattered throughout California, Washington, Texas, Canada and Taiwan. Whether this case moves to SDCA or stays in EDTX, the majority of party witnesses will have to travel a significant distance. On balance, the Court finds this factor to be neutral.

    iv.   *Other Practical Problems*

Practical problems include those that are rationally based on judicial economy. *Eolas Tech., Inc. v. Adobe Sys., Inc.*, 2010 WL 3835762, at *6 (denying a request to sever defendants), *aff'd In re Google, Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011); *see also Volkswagen II,* 566 F.3d 1349, 1351 (Fed. Cir. 2009) (quoting *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26

14

(1960) ("[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice … [T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Court leads to the wastefulness of time, energy and money that § 1404 was designed to prevent.")).

*Wi-LAN, Inc. v. Apple, Inc., et al.*, Cause No. 6:11-cv-453 was consolidated with *Wi-LAN, Inc. v. HTC Corp. et al.*, Cause No. 2:11-cv-68 for all pretrial issues, except venue, to promote judicial economy and to conserve the parties' resources. *See* Dkt. No. 107. The Court has denied transfer of the HTC Action to SDCA. The Moving Defendants (with the exception of Sierra) do not appear to dispute the consolidation since they jointly filed the present motion to transfer. Moreover, both the Apple Action and the HTC Action share a common defendant – HTC America, Inc. To transfer the Apple Action to SDCA while keeping the HTC Action here would unavoidably risk duplicative proceedings between two different district courts and create the inherent danger of potentially inconsistent rulings. On balance, the Court finds that the traditional notions of judicial economy weigh against transfer in this case.

    c.    **Public Interest Factors**

Having addressed the private interest factors in the § 1404(a) transfer analysis, the Court now turns to the public interest factors.

    i.    *Administrative difficulties flowing from court congestion*

The Apple Defendants submit that the difference in court congestion is neutral, while Wi-LAN asserts that this case can be tried more expeditiously in Texas because the trial is set for October 2013. Time to trial statistics in EDTX is 28.4 months compared to 32.5 months in SDCA.

*See* Dkt. No. 154, Ex. O1 *compared to* Ex. O2. The difference of four months is not substantial and typically would render this factor neutral. However, the Apple Action was filed on September 1, 2011, and now trial is only three months away. Even if transfer was granted when this motion was filed in November 2012, trial set in SDCA would most likely be later than October 2013. Accordingly, on balance, the Court finds this factor weighs against transfer.

        ii.        *Local interest in having localized interests decided at home*

Both sides agree that the local interest factor is neutral.

        iii.        *Familiarity of the forum with the law that will govern the case*

Wi-LAN argues this factor weighs against transfer because the counterclaims in this case present complex state law questions that will be governed by Texas law. Although that may be the case, the Court finds that this case primarily sounds in federal patent law. Therefore, this factor weighs only slightly against transfer, or at the best for movant, is neutral.

        iv.        *Problems of conflict of laws*

Similarly, Wi-LAN argues that this Court is more familiar with the Texas law that will apply to the choice of forum issues presented by the counterclaims. Without getting to the merits of the counterclaims, the Court finds that this factor weighs only slightly against transfer, or at the best for movant, is neutral.

        **d.**        **Conclusion**

On weighing the evidence, four factors weigh against transfer, while the other factors are either slightly against transfer or are, at best for the movant, neutral. No factor clearly favors transfer to SDCA. The balance of the private and public factors demonstrates that the Apple Defendants have fallen short of meeting their burden to show that transfer is clearly more

convenient.[4] Accordingly, transfer to the Southern District of California is **DENIED**.

## VI. SEVERANCE OF SIERRA

Lastly, the Court turns to Sierra's Supplemental Motion to Sever and Transfer Venue to SDCA (Dkt. No. 144). Sierra argues that joinder in the Apple Action is improper because the defendants market and sell different products or processes. Sierra points out that its accused products were independently developed and tested, and that the other defendants are its competitors in the marketplace. Sierra further contends that the only palpable connection between the defendants is that they are accused of infringement by at least one claim of each of the patents-in-suit, and that alone is insufficient to justify joinder.

As discussed above, under both Rule 20 and *In re EMC I*, multiple defendants may be joined in the same action if: (1) the claims against the defendants arise out of the "same transaction, occurrence, or series of transactions or occurrences," and (2) there is a "question of law or fact common to all defendants." 677 F.3d at 1356. In the patent infringement context, claims against independent defendants may not be joined under Rule 20 "unless the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts." *Id.* at 1359. "[C]laims of infringement of the same patent by independent parties, without more, are not part of the same transaction or occurrence . . . ." *Id.* at 1357. "Unless there is an actual link between the facts underlying each claim of infringement, independently developed products using differently sourced parts are not part of the same transaction, even if they are otherwise coincidentally identical." *Id.* at 1359. In determining whether there is an "actual link"

---

[4] The Court has also reviewed and considered Defendant Apple's Notice of Supplemental Authority—an order by the Southern District of Florida granting Apple's motion to transfer a case filed by Wi-LAN to the SDCA. *See* Dkt. No. 299. However, the Court finds the Florida Court's opinion distinguishable at least because it involves a different set of patents, a different set of defendants, and as a result, arise from a very different set of facts.

between Sierra's accused infringement and that of the other Apple Defendants, the Court may consider: (1) the temporal proximity of alleged infringement, (2) the relationship among defendants, (3) the use of common components in the accused products, (4) the licensing or technology agreements between defendants, (5) the shared development and manufacturing, and (6) whether the damages sought are based on lost profits. *Norman IP Holdings, LLC v. Lexmark Intern., Inc.*, 2012 WL 3307942, at *2 (E.D. Tex. Aug. 10, 2012).

First, there is a common infringement question among the accused products in the Apple Action. Wi-LAN alleges infringement of the same patents by products compliant with the identified industry standards.

The Court next considers whether the facts underlying Wi-LAN's claim against the Apple Defendants share an aggregate of operative facts. Here, the accused products share certain operational similarities in that their alleged infringement is based on compliance with many of the same industry standards aimed at enhancing communication between all of the accused products. *See generally* Dkt. No. 190, Ex. 57. Although the accused products made or sold by each defendant may be different or independently developed, the vast majority of them (including certain of Sierra's accused products) incorporate chipsets from the same third-party supplier, Qualcomm. Those products, therefore, make use of "identically sourced components" that are common to at least Sierra and many of the other Apple Defendants.

Additionally, Sierra and the Apple Defendants have all participated in standards-setting organizations that promulgated the industry standards at issue. The Apple Defendants' accused products operate on common carriers whose networks utilize the cellular standards at issue here. The inherent nature of developing standards-compliant products creates competition, but also

necessitates some level of coordination between players within the industry. Since compliance with these standards is an underlying theme in this case, this forms another piece of the "same transaction or occurrence."

Sierra's extensive business relationship with HP is yet another "factual link" that makes joinder appropriate here. Sierra admits that HP is a customer that purchases embedded modules, a type of wireless adapter, and integrates those modules into its accused laptop computers. *See* Dkt. No. 177 at 3. Accordingly, on weighing the facts, the Court finds that the accused products share an "aggregate of operative facts" adequate to meet Rule 20's transaction-or-occurrence test. As a result, the Court is persuaded that these facts fall within the guidance of *In re EMC I* and joinder is appropriate in this case. Sierra's motion to sever is hereby **DENIED**.

During the hearing held on December 14, 2012, counsel for Sierra clearly stated that Sierra does not have any substantive distinctions in the positions made by the Apple Defendants in the joint transfer motion. *See* 12/14/2012 Tr. at 98:16-25. Therefore, the Court does not separately address transfer as to Sierra, but denies it for the same reasons discussed earlier.

## VI. CONCLUSION

For the reasons discussed, the Court hereby (1) **DENIES** Defendants' Motion to Sever and Transfer Venue to United States District Court for the Southern District of California (Dkt. No. 130), and (2) **DENIES** Sierra Wireless America, Inc.'s Supplemental Motion to Sever and Transfer Venue to United States District Court for the Southern District of California (Dkt. No. 144).

**So ORDERED and SIGNED this 17th day of July, 2013.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE